ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
MELANIE D. MORGAN, ESQ.
Nevada Bar No. 8215
CHRISTINE PARVAN, ESQ.
Nevada Bar No.10711
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144
Telephone:  (702) 634-5000
Facsimile:  (702) 380-8572
Email:  ariel.stern@akerman.com
christine.parvan@akerman.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FIRST HORIZON HOME LOANS, a Division of First Tennessee Bank, N.A.<br><br>Plaintiff,<br><br>vs.<br><br>DAY DAWN CROSSING HOMEOWNERS ASSOCIATION; SFR INVESTMENTS POOL 1, LLC; DOE INDIVIDUALS I-X, inclusive, and ROE CORPORATIONS I-X, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff First Horizon Home Loans, a Division of First Tennessee Bank, N.A. (**First Horizon**) complains as follows:

## **PARTIES AND JURISDICTION**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.  First Horizon is a citizen of Tennessee and, on information and belief, none of the defendants is a citizen of Tennessee.  The amount in controvery exceeds $75,000.

2. First Horizon, a division of First Tennessee Bank National Association successor in interest by merger to First Horizon Home Loan Corporation, is a national banking association with its main office in the state of Tennessee and is, therefore, a citizen of Tennessee for purposes of

{32855754;1}

diversity jurisdiction. *See* 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307, 126 S. Ct. 941, 945 (2006) ("[A] national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located."). The diversity of citizenship requirement is met. *See Carolina Casualty Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082 (9th Cir. 2014). Defendants Day Dawn Crossing Homeowners Association and SFR Investments Pool I, LLC are, on information and belief, not citizens of Tennessee. The amount in controversy requirement is met. First Horizon seeks a declaration that its deed of trust, which secures a loan with a principal balance of $399,040.06, was not extinguished by a homeowner's association non-judicial foreclosure sale that is the basis for SFR's claim to title to the real property sub judice.

3. Defendant Day Dawn Crossing Homeowners Association (**Day Dawn**) is, on information and belief, a non-profit corporation organized under the laws of the state of Nevada. First Horizon is informed and believes and therefore alleges Day Dawn is the purported beneficiary under an alleged homeowners' association lien dated February 26, 2009. First Horizon is informed and believes and therefore alleges Day Dawn foreclosed on the lien on January 9, 2013.

4. Defendant SFR Investments Pool 1, LLC (**SFR**) is, on information and belief, a limited liability company organized under the laws of the state of Nevada. After a reasonable search, First Horizon cannot determine the citizenship of the members of SFR. First Horizon is informed and believes and therefore alleges SFR purchased the property at the HOA foreclosure sale, acquiring title via a trustee's deed upon sale dated January 9, 2013.

5. Does I through X, inclusive (the **Doe Defendants**), are individuals who may be liable for damages with the named defendants on the allegations set forth in this complaint or may have received fraudulent transfers, which are avoidable pursuant to NRS Chapter 112. First Horizon may seek leave of Court to amend this complaint to reflect the true names and identities of the Doe Defendants when known.

6. Roe Corporations I through X, inclusive (the **Roe Defendants**), are corporate entities that may be liable for damages with the named defendants on the allegations set forth in this complaint or may have received fraudulent transfers, which are avoidable pursuant to NRS Chapter

{32855754;1}

112. First Horizon may seek leave of Court to amend this complaint to reflect the true names and identities of the Roe Defendants when known.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 for reasons stated above.

8. Venue is proper in this Court under 28 U.S.C. §1391. The property that is the subject of this action is located at 8057 Eurorail Street, Las Vegas, Nevada 89131 (the **property**). Venue is proper in this Court under 28 U.S.C. § 1391(1) and (2) because this action seeks to determine an interest in property located within Clark County, Nevada and because this lawsuit arises out of a foreclosure of real property located within Nevada.

## GENERAL ALLEGATIONS

9. Under Nevada state law, homeowners' associations have the right to charge property owners residing within the community assessments to cover the homeowners' associations' expenses for maintaining or improving the community, among other things.

10. When these assessments go unpaid, the association may impose a lien and then foreclose on a lien if the assessments remain unpaid.

11. NRS Chapter 116 generally provides a non-judicial foreclosure scheme for a homeowners' association to conduct a non-judicial foreclosure where the unit owner fails to pay its monthly assessments.

12. NRS § 116.3116 makes a homeowners' association lien for assessments junior to a first deed of trust beneficiary's secured interest in the property, with one limited exception: a homeowners' association lien is senior to a first deed of trust beneficiary's secured interest "to the extent of any charges incurred by the association on a unit pursuant to NRS § 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS § 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien[.]" NRS § 116.3116(2)(c).

{32855754;1}

### The Deed of Trust and Assignment

13. On March 6, 2008, Donald J. O'Shea (**O'Shea**) purchased the property. O'Shea financed ownership of the property by way of a loan in the amount of $401,355.00 secured by a deed of trust (the **senior deed of trust**) dated March 5, 2008. A true and correct copy of the senior deed of trust is recorded with the Clark County Recorder as **Instrument No. 20080314-0002309**.

14. On October 12, 2010, the senior deed of trust was assigned to First Horizon via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Clark County Recorder as **Instrument No. 201011090002066**.

15. O'Shea defaulted under the terms of the note and senior deed of trust by failing to make all payments due. The unpaid principal balance due on the loan exceeds $399,040.06. The total amount due will continue to increase pursuant to the note and senior deed of trust.

16. Although First Horizon demanded O'Shea pay the amounts due under the loan, O'Shea has failed and refused to do so, and continues to fail and refuse to do so.

17. First Horizon intends to foreclose under the senior deed of trust to recover some or all of the amounts owed as a result of O'Shea's failure to repay the loan. However, Day Dawn's foreclosure and purported deed to SFR has placed a cloud on First Horizon's deed of trust.

### The HOA Lien and Foreclosure

18. Upon information and belief, O'Shea purportedly failed to pay Day Dawn all amounts due to it. On February 26, 2009, Day Dawn, through its agent, Alessi & Koenig, LLC (**Alessi & Koenig**) recorded a notice of delinquent assessment (lien). Per the notice, the amount due to Day Dawn was $810.00, which includes $470.00 in collection and/or attorney fees, and $50.00 in collection costs, late fees, service charges and interest. A true and correct copy of the notice of lien is recorded with the Clark County Recorder as **Instrument No. 20090226-0003233.**

19. On June 25, 2009, Day Dawn, through its agent Alessi & Koenig, recorded a notice of default and election to sell under homeowners association lien. The notice states the amount due to Day Dawn was $1,895.00 as of June 3, 2009, but does not specify whether it includes dues, interest, fees and collection costs in addition to assessments. A true and correct copy of the notice of

{32855754;1}

default is recorded with the Clark County Recorder as **Instrument No. 20090625-0004477**. The notice of default also does not specify the super-priority amount claimed by Day Dawn and fails to describe the "deficiency in payment" required by NRS § 116.31162(1)(b)(1).

20. On January 20, 2010, Day Dawn, through its agent Alessi & Koenig, recorded a notice of trustee's sale. The trustee's sale was scheduled for February 17, 2010. The notice states the amount due to Day Dawn was $4,080.00, which includes the total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the notice of sale. A true and correct copy of the notice of sale is recorded with the Clark County Recorder as **Instrument No. 201001200000770**. The notice of sale does not identify the super-priority amount claimed by Day Dawn and fails to describe the "deficiency in payment" required by NRS § 116.31162(1)(b)(1).

21. On August 21, 2012, Day Dawn, through its agent Alessi & Koenig, recorded a second notice of trustee's sale stating a sale date of September 19, 2012. The notice states the amount due to Day Dawn was $3,710.00, which includes the total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the notice of sale. A true and correct copy of the notice of sale is recorded with the Clark County Recorder as **Instrument No. 201208210001698**. The notice of sale does not identify the super-priority amount claimed by Day Dawn and fails to describe the "deficiency in payment" required by NRS § 116.31162(1)(b)(1).

22. In none of the recorded documents nor in any notice did Day Dawn and/or its agent provide notice of the purported super-priority lien amount, where to pay the amount, how to pay the amount or the consequences for failure to do so.

23. In none of the recorded documents did Day Dawn and/or its agent identify the amount of the alleged lien that was for late fees, interest, fines/violations or collection fees/costs.

24. In none of the recorded documents nor in any notice did Day Dawn and/or its agent specify whether it was foreclosing on the super-priority portion of its lien, if any, or on the sub-priority portion of its lien.

{32855754;1}

25. In none of the recorded documents nor in any notice did Day Dawn and/or its agent specify the senior deed of trust would be extinguished by Day Dawn's foreclosure.

26. In none of the recorded documents nor in any notice did Day Dawn and/or its agent identify any way by which the beneficiary under the senior deed of trust could satisfy the super-priority portion of Day Dawn's claimed lien.

27. Day Dawn foreclosed on the property on January 9, 2013. A trustee's deed upon sale in favor of SFR was recorded on January 11, 2013. A true and correct copy of the foreclosure deed is recorded with the Clark County Recorder as **Instrument No. 201301110003180.**

28. Upon information and belief, Alessi & Koenig wrote in the foreclosure deed that the sale price at the Januarty 9, 2013 foreclosure sale was $10,100.00. Day Dawn's sale of the property to SFR for less than 3% of the value of the unpaid principal balance on the senior deed of trust, and, on information and belief, for a similarly diminutive percentage of the property's fair market value, is commercially unreasonable and not in good faith as required by NRS § 116.1113.

29. Upon information and belief, SFR failed to pay Day Dawn all amounts due to it. On January 9, 2015, Day Dawn, through its agent, Assessment Management Services (**AMS**) recorded a notice of claim of delinquent violation fines lien. Per the notice, the amount due to Day Dawn was $1,177.92 as of December 29, 2014 which amount may include late fees, fines, collection fees, and interest. A true and correct copy of the notice of lien is recorded with the Clark County Recorder as **Instrument No. 20150109-0002552**.

## FIRST CAUSE OF ACTION

### (Quiet Title/Declaratory Judgment against SFR)

30. First Horizon repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

31. Pursuant to 28 U.S.C. § 2201, this Court is empowered to declare the rights of parties and other legal relations of parties regarding the property at issue.

32. An actual controversy has arisen between First Horizon and defendants regarding the property. The senior deed of trust is a first secured interest on the property. As a result of the

{32855754;1}

January 9, 2013 HOA foreclosure sale, SFR claims an interest in the property, and on information and belief, asserts SFR owns the property free and clear of the senior deed of trust.

33. First Horizon's interest in the senior deed of trust encumbering the property constitutes an interest in real property.

*NRS Chapter 116 Violates First Horizon's Right to Procedural Due Process*

34. First Horizon asserts that NRS Chapter 116's scheme of HOA super priority non-judicial foreclosure violates First Horizon's procedural due process rights under the state and federal constitutions.

35. The Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution protect First Horizon from being deprived of its deed of trust in violation of procedural due process guarantees of notice and an opportunity to be heard.

36. First Horizon asserts that there is no way to apply Nevada's scheme of non-judicial HOA super priority foreclosure that complies with Nevada and the United States' respective guarantees of procedural due process.

37. The state of Nevada has become sufficiently intertwined with HOA foreclosures such that state and federal procedural due process protections for First Horizon's deed of trust apply, to wit:

    a) The super priority lien did not exist at common law, but rather is imposed by legislative fiat.

    b) Nevada's legislature made super priority mandatory and it could not be altered by private contract.

    c) The super priority lien has no nexus whatsoever to a private agreement between Day Dawn and First Horizon, but, again, is imposed by legislative enactment.

38. Since the state of Nevada is responsible for the creation of the super priority lien and has made it mandatory, then the state of Nevada's HOA super priority can fairly be said to be the result of state action subject to procedural due process safeguards.

{32855754;1}

39. On its face, Nevada's scheme of non-judicial HOA super priority foreclosure lacks any pre or post deprivation methods of providing First Horizon with notice and an opportunity to be heard:

    a) NRS § 116.31162 and NRS § 116.311635 do not require that Day Dawn provide First Horizon with written notice of the sum that constitutes the super priority portion of the assessment lien.

    b) NRS Chapter 116 seeks to compel First Horizon to pay the entirety of Day Dawn's lien, but does not provide First Horizon with any procedure for reimbursement to First Horizon.

    c) NRS Chapter 116 seeks to insulate its scheme of super priority non-judicial foreclosure by providing a purchaser at an HOA foreclosure sale with title that is not subject to equity or right of redemption.

    d) NRS Chapter 116 fails to provide First Horizon with a statutorily enforceable mechanism to compel Day Dawn to inform First Horizon of the sum of the HOA super priority amount.

    e) NRS Chapter 116 fails to provide First Horizon with a private right of action before the foreclosure to contest Day Dawn's failure to provide it with constitutionally mandated notice of the super priority sum and a right to challenge Day Dawn's calculation of that sum.

    f) NRS Chapter 116 fails to provide First Horizon with a private right of action after the foreclosure to contest Day Dawn's failure to provide it with constitutionally mandated notice of the super priority sum.

40. First Horizon requests that this Court set aside the HOA foreclosure sale because NRS Chapter 116's scheme of HOA super priority foreclosure violates the procedural process clauses of the Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution.

*Additional Reasons the HOA Foreclosure Sale Did Not Extinguish the Senior Deed of Trust*

{32855754;1}

41. The HOA sale did not extinguish the senior deed of trust for additional reasons stated below.

42. The foreclosure sale did not extinguish the senior deed of trust because the recorded notices, even if they were in fact provided, failed to describe the lien in sufficient detail as required by Nevada law, including, without limitation: whether the deficiency included a "super-priority" component, the amount of the super-priority component, how the super-priority component was calculated, when payment on the super-priority component was required, where payment was to be made or the consequences for failure to pay the super-priority component.

43. The foreclosure sale did not extinguish the senior deed of trust because the sale was commercially unreasonable or otherwise failed to comply with the good faith requirement of NRS § 116.1113 in several respects, including, without limitation, the lack of sufficient notice, the sale of the property for a fraction of the loan balance or actual market value of the property, a foreclosure that was not calculated to promote an equitable sales price for the property or to attract proper perspective purchasers, and a foreclosure sale that was designed and/or intended to result in maximum profit for Day Dawn, its agent and SFR at the sale without regard to the rights and interest of those who have an interest in the loan and made the purchase of the property possible in the first place.

44. The foreclosure sale did not extinguish the senior deed of trust because otherwise the sale would violate First Horizon's rights to due process, as a result of Day Dawn's failure to provide sufficient notice of the super-priority component of Day Dawn's lien, the manner and method to satisfy it, and the consequences for failing to do so.

45. The foreclosure sale did not extinguish the senior deed of trust because otherwise the sale would violate First Horizon's rights to due process, as a result of Day Dawn's improper calculation of the super-priority component, its inclusion of charges that are not part of the super-priority lien under Nevada law, and its rejection of First Horizon's tender of the super-priority component of the lien.

{32855754;1}

46. The foreclosure sale did not extinguish the senior deed of trust because SFR does not qualify as a bona fide purchaser for value, because it was aware of, or should have been aware of, the existence of the senior deed of trust and the commercial unreasonableness of the HOA sale.

47. First Horizon is entitled to a declaration, pursuant to 28 U.S.C. § 2201 and NRS § 40.010, that the HOA sale did not extinguish the senior deed of trust.

48. First Horizon was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Breach of NRS § 116.1113 against Day Dawn)

49. First Horizon repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

50. NRS § 116.1113 provides that every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement.

51. Day Dawn's recorded CC&Rs contain a mortgage protection clause which represents that Day Dawn's entire lien will be subordinate to the senior deed of trust.

52. NRS Chapter 116 requires Day Dawn to comply with the obligations of the CC&Rs, including the mortgage protection clause.

53. In making the representation in the CC&Rs that its lien would be subordinate to a senior deed of trust, Day Dawn undertook a duty to inform lenders and loan servicers like First Horizon that its representation regarding the priority of liens in the CC&Rs was false, and to give First Horizon a reasonable opportunity to protect their interests in the property.

54. Day Dawn also undertook a duty to identify the super-priority amount to lenders and loan servicers like First Horizon, to advise it that its security interest was at risk, and to provide an opportunity to satisfy the super-priority amount to protect its security interest in the property.

55. Day Dawn breached its duty of good faith by not complying with the obligations in the CC&Rs that its lien would be subordinate to the senior deed of trust, by not informing First Horizon that its representation in the CC&Rs regarding the priority of liens was false, by not

{32855754;1}

identifying the super-priority amount of its lien for First Horizon, by not notifying First Horizon that its security interest was at risk, and by obstructing First Horizon's ability to protect its security interest in the property.

56. If it is determined Day Dawn's sale extinguished the senior deed of trust notwithstanding the deficiencies, violations, and improper actions described herein, Day Dawn's breach of its obligation of good faith will cause First Horizon to suffer general and special damages in the amount equal to the fair market value of the property or the unpaid principal balance of the loan at issue, plus interest, at the time of the HOA sale, whichever is greater.

57. First Horizon was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### (Wrongful Foreclosure against Day Dawn)

58. First Horizon repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

59. To the extent defendants contend or the Court concludes Day Dawn's foreclosure sale extinguished the senior deed of trust, the foreclosure was wrongful.

60. Because Day Dawn failed to give adequate notice and an opportunity to cure the deficiency, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

61. Because Day Dawn sold the property for a grossly inadequate amount, compared to the value of the property and amount of outstanding liens defendants contend were extinguished by the foreclosure sale, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

62. Because Day Dawn violated the representation in the CC&Rs that its lien would be subordinate to a senior deed of trust, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

{32855754;1}

63. Because Day Dawn violated the good faith requirements of NRS § 116.1113, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

64. If it is determined Day Dawn's foreclosure sale extinguished the senior deed of trust notwithstanding the deficiencies, violations, and improper actions described herein, Day Dawn's actions will have caused First Horizon to suffer general and special damages in the amount equal to the fair market value of the property or the unpaid principal balance of the loan at issue, plus interest, at the time of the sale, whichever is greater.

65. First Horizon was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### (Injunctive Relief against SFR)

66. First Horizon repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

67. First Horizon disputes SFR's claim it owns the property free and clear of the senior deed of trust.

68. Any sale or transfer of the property by SFR, prior to a judicial determination concerning the respective rights and interests of the parties to this case, may be rendered invalid if the senior deed of trust still encumbers the property in first position and was not extinguished by the HOA sale.

69. First Horizon has a substantial likelihood of success on the merits of the complaint, and damages would not adequately compensate it for the irreparable harm of the loss of title to a bona fide purchaser or loss of the first position priority status secured by the property.

70. First Horizon has no adequate remedy at law due to the uniqueness of the property involved in this case and the risk of the loss of the senior security interest.

71. First Horizon is entitled to a preliminary injunction prohibiting SFR, or its successors, assigns, or agents, from conducting any sale, transfer, or encumbrance of the property that is claimed

{32855754;1}

to be superior to the senior deed of trust or not subject to the senior deed of trust.

72. First Horizon is entitled to a preliminary injunction requiring SFR to pay all taxes, insurance and homeowner's association dues during the pendency of this action.

## **PRAYER FOR RELIEF**

First Horizon requests the Court grant the following relief:

1. To determine that SFR purchased the property subject to First Horizon's senior deed of trust;

2. Alternatively, to declare that the HOA foreclosure sale was commercially unreasonable, in violation of NRS § 116.1113, and void ab initio because a sale of the property for $10,100.00 free and clear of First Horizon's senior feed of trust shocks the conscience such that SFR is not a bona fide purchaser for value; and Day Dawn's foreclosure sale to SFR is void pursuant to the Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution;

3. Alternatively, to enter an order requiring Day Dawn to pay First Horizon all amounts by which it was damaged as a result of Day Dawn's wrongful foreclosure and/or violation of the good faith provisions of NRS § 116.1113;

4. To enter a preliminary injunction prohibiting SFR, its successors, assigns, or agents from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust;

5. To enter a preliminary injunction requiring SFR to pay all taxes, insurance, and homeowner's association dues during the pendency of this action;

6. To award First Horizon its reasonable attorneys' fees as special damages and the costs of suit; and

{32855754;1}

7. To grant such other and further relief the Court deems proper.

DATED July 6, 2015.

**AKERMAN LLP**

*/s/ Melanie D. Morgan*

Ariel E. Stern, Esq.
Nevada Bar No. 8276
Melanie D. Morgan
Nevada Bar No. 8215
Christine Parvan, Esq.
Nevada Bar No. 10711
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
*Attorneys for Plaintiff*

{32855754;1}