# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| First Horizon Home Loans, a Division of First Tennessee Bank, N.A., <br><br> Plaintiff <br><br> v. <br><br> Day Dawn Crossing Homeowners Association; SFR Investments Pool 1, LLC, <br><br> Defendants | Case No.: 2:15-cv-01262-JAD-NJK <br><br><br> **Order Granting in Part and Denying in Part Cross-Motions for Summary Judgment** <br><br> [ECF Nos. 65, 66] |
| All other claims and parties | |

First Horizon Home Loans (the bank) brings this action to challenge the effect of the 2013 non-judicial foreclosure sale of a home on which it claims a deed of trust. Foreclosure-sale purchaser SFR Investments Pool 1, LLC countersues for a declaration that it owns the property free and clear of the bank's interest. The bank and SFR crossmove for summary judgment on their quiet-title claims. I find that the bank has failed to demonstrate its entitlement to summary judgment in its favor on this record on anything but SFR's slander-of-title theory and that genuine issues of fact regarding the circumstances surrounding the foreclosure sale preclude complete summary judgment in favor of SFR. So I enter summary judgment in favor of SFR on the bank's due-process-violation theory and in favor of the bank on SFR's slander-of-title counterclaim, deny the motions in all other respects, and order the parties to a mandatory settlement conference with the magistrate judge.

**Factual and Procedural Background**

**A.    The HOA foreclosure**

Donald J. O'Shea purchased the home at 8057 Eurorail Street in Las Vegas, Nevada, in 2008 with a $401,355 loan from First Horizon Home Loans, secured by a deed of trust that designated Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary.[1] After two assignments, First Horizon became the beneficiary of that deed of trust in November 2010.[2] The home is located in the Day Dawn Crossing common-interest community and subject to the declaration of covenants, conditions, and restrictions (CC&Rs) for its homeowners' association.[3]

The Nevada Legislature gave homeowners' associations a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure to enforce such a lien.[4] After the assessments on this home became delinquent, the Day Dawn Crossing Homeowners Association (the HOA) commenced non-judicial foreclosure proceedings on it under Chapter 116 in 2009.[5] The home was ultimately sold to SFR at the foreclosure sale on January 9, 2013, for $10,100.[6] As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under

---

[1] ECF No. 65-2 (deed of trust).
[2] ECF Nos. 65-3, 65-4-2 (assignments).
[3] ECF No. 65-15 (recorded CC&Rs).
[4] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).
[5] ECF No. 65-6 (notice of lien for delinquent assessments).
[6] ECF No. 65-11 (foreclosure deed upon sale).

the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[7]

**B.    The parties' claims**

The bank sues both SFR and the HOA.[8] It asserts four claims: quiet title and injunctive relief against SFR, and breach of NRS 116.1113 and wrongful foreclosure against the HOA. Both claims against the HOA are contingent claims seeking damages only "[i]f it is determined" that the foreclosure sale extinguished the bank's deed of trust.[9] SFR counterclaims against First Horizon[10] for quiet title and slander of title.[11] Similarly, the HOA counterclaims against First Horizon for a declaration that the foreclosure sale was valid and to quiet title in favor of SFR.[12] I find that the bank and SFR's competing quiet-title claims are the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—actions "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[13] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[14]

---

[7] *SFR I*, 334 P.3d at 419.

[8] ECF No. 1.

[9] *Id.*

[10] ECF No. 8.

[11] Although SFR also pleads a "claim" for injunctive relief, injunctive relief is a remedy, not an independent claim for relief. And here, it is pled as a remedy in conjunction with SFR's quiet-title claim.

[12] ECF No. 17.

[13] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[14] *Id.* at 1112.

## C. The competing summary-judgment motions

Discovery has closed,[15] and the bank and SFR cross-move for summary judgment. The bank offers two reasons why I must hold that the HOA foreclosure sale did not extinguish its deed of trust: (1) unfairness plus a grossly inadequate sales price compel the court to set aside the sale under the Nevada Supreme Court's holding in *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*[16]; and (2) the statute under which this HOA foreclosure sale occurred was unconstitutional.[17] It also seeks summary judgment on SFR's claims, arguing that it did not disparage the property's title or cause SFR harm and that SFR cannot claim bona-fide-purchaser-without-notice status. SFR disputes each of these propositions[18] and asks for judgment in its favor, arguing that the bank's deed of trust was extinguished by the foreclosure sale as a matter of Nevada law and presumptions.[19] The HOA opposes the bank's motion[20] and joins in SFR's.[21]

## Discussion

### A. Standards for cross-motions for summary judgment

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[22] The moving party bears the initial responsibility of

---

[15] *See* ECF No. 21 at 2 (noting that discovery closed 2/9/16).
[16] *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641 (Nev. 2017).
[17] ECF No. 65.
[18] ECF No. 71.
[19] ECF No. 66.
[20] ECF No. 69.
[21] ECF No. 67.
[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

4

presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[23] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue of material fact for trial.[24]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[25] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[26] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[27] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[28]

---

[23] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[24] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[25] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[26] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[27] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[28] *Celotex*, 477 U.S. at 322.

**B.     The bank's motion for summary judgment [ECF No. 65]**

   ***1.     The bank has not established that it is entitled to set aside the sale under <u>Shadow Canyon</u>.***

As its first argument, the bank contends that this court should set aside the foreclosure sale because SFR purchased the property at a grossly inadequate price and the sale was plagued with irregularities that rendered it unfair. This price-plus-irregularities theory is grounded in the Nevada Supreme Court's holding in *Shadow Canyon* that, although inadequacy in price alone will not justify setting aside a foreclosure sale, "where the inadequacy of the price is great, a court may grant relief based on slight evidence of fraud, unfairness, or oppression" that affected the sale.[29] The court must "analyze the totality of the circumstances when determining whether to set aside an HOA foreclosure sale on equitable grounds."[30] As the Nevada Supreme Court clarified in *Resources Group, LLC v. Nevada Association Services, Inc.*, "if the totality of the circumstances demonstrates that the sale itself was affected by 'fraud, unfairness, or oppression,' then a court may set the sale aside. This has been the rule in Nevada since 1963."[31]

The bank argues that the property was worth $167,000 based on its appraisal,[32] so SFR's $10,100 purchase price—a 93% discount—was grossly inadequate.[33] It adds that uncertainties in Nevada lien-foreclosure law at the time the HOA foreclosed, the absence of evidence that

---

[29] *Shadow Canyon*, 405 P.3d at 646–47.

[30] *Res. Grp., LLC as Tr. of E. Sunset Rd. Tr. v. Nevada Ass'n Servs., Inc.*, 437 P.3d 154, 160 (Nev. 2019) (citing *Shadow Wood*, 366 P.3d at 1114).

[31] *Id*. at 160–61. The HOA's argument that the bank's failure to tender any part of the lien means that the foreclosure sale is presumed valid, *see* ECF No. 69 at 5, ignores the other well-recognized exceptions to NRS 116.3116's impact, such as *Shadow Canyon* and the Federal Foreclosure Bar.

[32] ECF No. 65-12.

[33] ECF No. 65 at 7.

6

foreclosure agent Alessi & Koenig had the HOA's authorization to go forward with the foreclosure, and a mortgage-protection clause in the CC&Rs[34] establish the unfairness required to set aside the sale under *Shadow Canyon*.

Mortgage-protection language in the CC&Rs could not be found to have affected the sale because everyone "is presumed to know the law,"[35] and Nevada law provided that (1) HOA superpriority liens are "'prior to all other liens and encumbrances[,]' . . . even a first deed of trust" (NRS 116.3116(2)),[36] and (2) HOA rights cannot be waived by agreement (NRS 116.1104).[37] And to find "unfair" the state of HOA foreclosure law at the time of this 2013 sale would be inconsistent with the Nevada Supreme Court's recognition that the *SFR I* decision in 2014 "did no more than interpret the will of the enacting legislature"; it "did not overrule any existing precedent."[38] Though there were conflicting legal opinions circulating in the community at the time of this foreclosure sale, NRS 116.3116(2) had said what it said for many years before.[39]

But even if I agreed that SFR's purchase price was grossly inadequate and that the bank has established the unfairness that Nevada law requires for a foreclosure sale to be set aside, the bank is still missing one necessary element: it has offered nothing to show that this unfairness

---

[34] *Id*. at 8–9.

[35] *Smith v. State*, 151 P. 512, 513 (Nev. 1915) ("Every one [sic] is presumed to know the law and this presumption is not even rebuttable.").

[36] *SFR I*, 334 P.3d at 410.

[37] *See JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 2018 WL 1448728, 414 P.3d 812 (unpublished) (Nev. Mar. 15, 2018) (rejecting the notion that "mortgage protection provisions in CC&Rs could dissuade foreclosure-sale bidders, reasoning that, "[i]n light of [NRS 116.1104], the CC&Rs are not sufficient to create a genuine issue of material fact as to unfairness.").

[38] *K&P Homes v. Christiana Tr.*, 398 P.3d 292, 294 (Nev. 2017).

[39] *See SFR I*, 334 P.3d at 410 (recounting the history of the statute).

impacted the sale. As the *Shadow Canyon* court explained, "if the district court closely scrutinizes the circumstances of the sale and finds no evidence that the sale was affected by fraud, unfairness, or oppression, then the sale cannot be set aside, regardless of the inadequacy of price."[40] The bank points to nothing in the record that would suggest that it sat on its hands—or that anyone else connected to this sale acted or failed to act—because of this alleged unfairness. So, the bank has not shown that it is entitled as a matter of law to set aside the foreclosure sale based on a *Shadow Canyon* price-plus-unfairness theory.

### 2. *Nevada's HOA-foreclosure scheme did not violate the bank's due-process rights.*

The bank's second argument for summary judgment on the competing quiet-title claims is that Nevada's HOA foreclosure scheme was unconstitutional because it did not require HOAs to inform mortgage lenders of the amount of the superpriority portion of the lien or the risk to their deeds of trust.[41] Both the Nevada Supreme Court and the Ninth Circuit Court of Appeals have held that this statutory scheme required constitutionally adequate notice.[42] The record also establishes that the bank received actual notice of this sale.[43]

As explained *supra*, the law presumes that the bank knew that NRS 116.3116(2) meant that unpaid HOA assessments put their first deed of trust at risk; due process did not require the HOA to tell the bank what the law already did. And the fact that the notice did not disclose the superpriority amount is of no legal consequence because NRS Chapter 116 also gave lienholders

---

[40] *Id.* at 648–49.

[41] ECF No. 65 at 10.

[42] *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 624 (9th Cir. 2019); *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1253 (Nev. 2018).

[43] ECF No. 66-7 (certified mail receipts).

like the bank notice that the HOA may have a superiority interest that could extinguish their security interests, putting them on inquiry notice.[44] Because the bank knew of the risk to its interest, it could have sued to determine the superpriority amount, attended the HOA sale and bid on the property, or paid the entire lien amount and sued for a refund.[45] As the Nevada Supreme Court noted when rejecting this same argument in *SFR I*, "it is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right."[46] Here, the bank had notice—both by mail and NRS Chapter 116—that its deed of trust was in jeopardy and an opportunity to protect that interest, so the bank cannot establish a due-process violation here. The bank's inability to prove this due-process-violation theory compels the denial of its motion and entitles SFR to summary judgment in its favor on this due-process theory.[47]

### 3. *The bank is entitled to summary judgment on SFR's slander-of-title claim.*

The bank also moves for summary judgment on SFR's claim that the bank's recording of a substitution of trustee and request for notice slandered SFR's title to this property.[48] The bank

---

[44] *Nationstar Mortg. LLC v. Amber Hills II Homeowners Ass'n*, 2016 WL 1298108, at *7, 9 (D. Nev. Mar. 31, 2016) (concluding that "[d]ue process does not require an HOA to state the superpriority amount in the foreclosure notice and lienholders have meaningful opportunities to preserve their interests in the property").

[45] *See, e.g.*, *Bank of New York Mellon v. Nevada Ass'n Servs., Inc.*, 2019 WL 2427938, at *5 (D. Nev. June 10, 2019).

[46] *SFR I*, 334 P.3d at 418 (quoting *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995)).

[47] Although SFR does not move for this specific relief, I find that the parties have had a full and fair opportunity to brief these issues and that granting summary judgment in favor of SFR on this theory is warranted on this record. *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'").

[48] ECF No. 65 at 12.

contends that SFR cannot create a triable issue of fact as to several elements of this claim; SFR offers no response.[49] The failure to oppose a motion for summary judgment does not permit the court to enter summary judgment by default, but the lack of a response is not without consequences.[50] As Rule 56(e) explains, "If a party fails . . . to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."[51] SFR's silence in response to the bank's summary-judgment push on this claim has left SFR unable to demonstrate the existence of a genuine issue of fact to support it. So I grant the bank's request for summary judgment on SFR's slander-of-title claim.

### *4.     Bona fide purchaser status*

Lastly, the bank argues that SFR was not a bona fide purchaser entitled to protection because it "is not some naïve, happenstance foreclosure bidder," but rather a sophisticated, well-funded investor created to snap up a portfolio of distressed properties sold at HOA foreclosure sales in Nevada.[52] The bank adds that SFR knew of the bank's interest in this property because the recorded deed of trust and assignments put it on record notice of that interest.[53] These considerations are not dispositive of SFR's bfp status.[54] So I find that the bank has not met its

---

[49] *See* ECF No. 71.

[50] *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

[51] Fed. R. Civ. P. 56(e)(2) & (3); *Heinemann*, 731 F.3d at 917.

[52] ECF No. 65 at 13.

[53] *Id*. at 15–16.

[54] *See Shadow Wood*, 366 P.3d at 1116.

burden on this motion to show an absence of genuine issues of fact as to SFR's bfp status on this property that justifies summary judgment in the bank's favor on this issue.

**C.     SFR's Motion for Summary Judgment [ECF No. 66]**

SFR contends that a handful of presumptions in Nevada law establish that the foreclosure sale was valid and extinguished the bank's deed of trust. It first argues that NRS 116.31166(3) bars the bank's equitable quiet-title claim by stating that an HOA foreclosure sale under Chapter 116 "vests in the purchaser the title of the unit's owner without equity or right of redemption."[55] SFR explains that this statute means that the bank has no right to redeem, which is "consistent with long-standing Nevada non-judicial foreclosure law that 'if the sale is properly, lawfully[,] and fairly carried out, the Bank cannot unilaterally create a right of redemption in itself.'"[56]

There is much wrong with SFR's argument. First, it purports to quote "NRS 116.3166(3)," but there is no such provision. SFR likely means to reference NRS 116.31*1*66(3), but subsection (3) of NRS 116.31166 does not contain the language that SFR quotes. Though subsection (1) comes close, it does not reference equity and states instead that "Every sale of a unit pursuant to NRS 116.31162 to 116.31168, inclusive, vests in the purchaser the title of the unit's owner subject to the right of redemption provided by this section."[57] SFR then purports to explain what a sale "without equity or right of redemption" does "[a]ccording to the Nevada Supreme Court" but then block-quotes from a United States Bankruptcy Court opinion.[58]

---

[55] ECF No. 66 at 5.

[56] *Id.* (quoting *Golden v. Tomiyasu*, 387 P.2d 989, 997 (Nev. 1963)).

[57] Nev. Rev. Stat. § 116.31166(1).

[58] *See* ECF No. 66 at 5 (quoting *In re Grant*, 303 B.R. 205, 209 (Bankr. D. Nev. 2003)). That bankruptcy court opinion quotes a 150-year-old Nevada Supreme Court decision.

11

Regardless, the bank is not pursuing a redemption right here; it is pursuing an equitable quiet-title claim. And the Nevada Supreme Court expressly held in *Shadow Wood* that "courts retain the power to grant equitable relief from a defective foreclosure sale when appropriate despite NRS 116.31166" because "the Legislature, through NRS 116.31166's enactment, did not eliminate the equitable authority of the courts to consider quiet title actions when an HOA's foreclosure deed contains conclusive recitals."[59] So SFR's contention that NRS 116.3166(3) bars this action is meritless.

Finally, SFR argues that other presumptions in Nevada law and conclusive recitals in the foreclosure deed mean that the burden is on the bank to prove that the sale is invalid—a burden that the bank can't satisfy. SFR overstates the impact of the deed recitals in Chapter 116. In *Shadow Wood*, the Nevada Supreme Court rejected the foreclosure-sale purchaser's argument that the conclusive presumptions in NRS 116.31166 "bar any post-sale challenge, regardless of basis. . . ."[60] The Court clarified that "the 'conclusive' recitals [merely] concern[ed] default, notice, and publication of the" notice of sale.[61] After considering and applying various tenets of statutory interpretation, the Court held that these recitals "did not eliminate the equitable authority of the courts to consider quiet title actions when an HOA's foreclosure deed contains conclusive recitals."[62] Because these presumptions may be overcome by evidence that the sale was affected by fraud, unfairness, or oppression, and the bank's quiet-title claim based on that theory remains live, SFR has not shown that it is entitled to summary judgment in its favor based on Nevada-law presumptions or deed recitals.

---

[59] *Shadow Wood*, 366 P.3d at 1111–12.

[60] *Id.* at 1110.

[61] *Id*.

[62] *Id*. at 1112.

**Conclusion**

IT IS THEREFORE ORDERED that:

- First Horizon Home Loans' Motion for Summary Judgment **[ECF No. 65] is GRANTED as to SFR Investment Pool 1, LLC's slander-of-title claim but DENIED in all other respects**;

- SFR Investments Pool 1, LLC's Motion for Summary Judgment **[ECF No. 66] is GRANTED in part and DENIED in part. Partial summary judgment is entered in favor of SFR on the Bank's due-process-violation theory, but the motion is denied in all other respects.**

- The court finds that FRCP 54(b) certification of this decision on the limited claims and theories resolved herein is not merited.

IT IS FURTHER ORDERED that **this case is referred to the magistrate judge for a mandatory settlement conference.** The parties' obligation to file their proposed joint pretrial order is tolled until 10 days after the settlement conference.

Dated: March 11, 2020

_____
U.S. District Judge Jennifer A. Dorsey